UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARK LAX, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:18-cv-03079-TWP-TAB |
| | ) | |
| WARDEN OF THE CORRECTIONAL | ) | |
| INDUSTRIAL FACILITY, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DIRECTING ENTRY OF FINAL JUDGMENT**

Mark Lax's ("Mr. Lax") petition for a writ of habeas corpus challenges his conviction in a prison disciplinary proceeding identified as CIC 18-04-0446. For the reasons explained in this Entry, Mr. Lax's petition must be **denied**.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974).

## II. The Disciplinary Proceeding

CIC 18-04-0446 is based on the following conduct report written on April 26, 2018, by

Investigator A. Mills:

> On 3/30/2018 at approx 2:18 pm, Offender Mark Lax 988393 (22L-3AS) assaulted Officer J. McGriff outside of the visiting room. Offender Lax had just concluded a visit and became argumentative with staff because they were unable to locate food items that were purchased by his visitor for him. Offender Lax refused several orders from multiple staff to return to his assigned housing unit and to submit to restraints. Due to Offender Lax's continued refusal to comply with orders to submit to restraints and displaying increasingly aggressive and volatile behavior, Offender Lax was sprayed with OC. When Sgt. M. Snow attempted to place Offender Lax in restraints, Offender Lax assaulted Sgt Snow. Officer J. McGriff attempted to assist in placing Offender Lax in restraints and was also assaulted by Offender Lax. Offender Lax punched Officer McGriff in the head. Officer McGriff received injuries from this assault and was sent to seek outside medical evaluation as a result of these injuries. Offender Lax's assault of Officer McGriff places him in violation of ADP code A-102 Staff assault.

Dkt. 14-1.

In the portion of the conduct report reading, "Disposition of physical evidence, if any,"

Investigator Mills wrote, "See CONFIDENTIAL case file 18-CIC-0033." *Id.* The confidential case

file includes 130 pages of documents related to this incident, including a report of investigation;

photographs of Mr. Lax, the officers involved in the incident, and their clothing; medical records

documenting the officers' injuries; and reports by the officers involved in the incident. Dkt. 16.

Notably, the confidential case file includes photographs showing bruising near Officer McGriff's

right eye. *See id.* at 39–42. It also includes an injury report by Officer McGriff in which he states,

"Offender punched me on the right side of my head." *Id.* at 73..

On April 28, 2018, Mr. Lax received notice that he had been charged with assaulting staff

in violation of Code A-102. Dkt. 14-3. He was convicted at a hearing on May 3, 2018. Dkt. 14-5.

According to the hearing officer, Mr. Lax asserted in his defense that he did not strike Officer

McGriff on purpose but was defending himself after being sprayed with OC. *Id.* The hearing

officer explained that he found Mr. Lax guilty based on all the evidence in the confidential case file, video of the incident, and photos of staff. *Id.*

The hearing officer assessed sanctions, including the deprivation of 365 days' earned credit time. *Id.* In addition, the hearing officer recommended that Mr. Lax be deprived of *all* his earned credit time pursuant to an Indiana Department of Correction ("IDOC") executive directive because his assault was against a staff member. *Id.* However, the IDOC eventually vacated that additional sanction. Dkt. 14-10 Mr. Lax's administrative appeals were otherwise denied. *See* dkts. 14-7, 14-8, 14-9.

### III. Analysis

Mr. Lax's numerous challenges to his conviction in CIC 18-04-0446 can be divided into four categories. One group of challenges asserts that he was denied due process because the prison staff did not adhere to IDOC policies and procedures in documenting and administrating the disciplinary proceeding and the event that gave rise to it. The second group takes issue with the severity of the sanctions assessed against him. The third concerns the evidence supporting Mr. Lax's conviction. Finally, Mr. Lax argues that his conviction was wrongful because his actions were the result of the officers' use of force against him. For the reasons set forth below, none of these challenges identifies a due-process violation entitling Mr. Lax to habeas relief.

### A.      Failure to Adhere to IDOC Policy

Mr. Lax argues that he was denied due process because several aspects of the disciplinary proceeding were not conducted according to IDOC policy. For example, the conduct report was not written or signed by the proper prison officials, and certain procedures were not followed with respect to the video evidence. *See* dkt. 5.

Even if Mr. Lax's claims are true, they do not justify habeas relief. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner,* 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis,* 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire ,* 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

**B.    Severity of Sanctions**

Mr. Lax asserts two arguments concerning the sanctions the hearing officer assessed. The first concerns the hearing officer's decision to eliminate Mr. Lax's entire earned credit time balance pursuant to the executive directive. But any issue regarding application of the executive directive is moot because the IDOC ultimately vacated that sanction. *See* Dkt. 14-10. "A case is moot when issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (internal citations omitted). "It has long been settled that a federal court has no authority 'to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.'" *Church of Scientology of Cal. v. United States,* 506 U.S. 9, 12 (1992) (quoting *Mills v. Green,* 159 U.S. 651, 653 (1895)). Because the IDOC has already vacated this

sanction, the Court cannot consider whether the sanction should have been assessed in the first place.

Mr. Lax also argues that the hearing officer failed to consider certain factors when selecting his sanctions and therefore did not satisfy the procedural requirements of the Disciplinary Code. This argument again amounts to an assertion that the respondent breached IDOC policy, and it fails for the reasons set forth in Part III(A), *supra*.

## C.     Sufficiency of the Evidence

Mr. Lax asserts several challenges to the evidence supporting his disciplinary conviction—for example, that the conduct report was not written by an eyewitness, that the video evidence does not conclusively show him striking Officer McGriff, that there is no evidence that he struck Officer McGriff intentionally, and that he did not cause Officer McGriff a serious bodily injury.

"[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat*, 288 F.3d at 981. "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

Investigator Mills' conduct report is "some evidence" supporting the hearing officer's finding of guilt. As Mr. Lax notes, Investigator Mills was not an eyewitness to the incident. However, the conduct report refers to the confidential case file, indicating that Investigator Mills prepared the report based on the evidence assembled in that investigation. *See* dkt. 14-1. The

conduct report indicates that, based on that evidence, Investigator Mills determined that Mr. Lax "punched Officer McGriff in the head." *Id.* The confidential case file includes extensive evidence supporting that conclusion, including Officer McGriff's own report stating that Mr. Lax punched him on the right side of his head. *See* dkt. 16 at 73.

There can be no dispute that punching Officer McGriff would violate Code A-102. An inmate violates Code A-102 by "[k]nowingly or intentionally touching another person in a rude, insolent, or angry manner." *See* dkt. 14-2 at § 102. Investigator Mills' conduct report and the confidential case file are "some evidence" that Mr. Lax knowingly or intentionally touched Officer McGriff in an insolent or angry manner by punching him in the head. Moreover, the hearing officer's report makes clear that he viewed and considered that evidence in finding Mr. Lax guilty. *See* dkt. 14-5.

When assessing the sufficiency of the evidence in a habeas proceeding, the Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)). Instead, the Court must limit its inquiry "to whether *any reliable evidence* exists to support the conclusions drawn by the hearing officer." *Id.* (emphasis added).

Mr. Lax's evidentiary challenges mostly concern what weight should be afforded to certain pieces of evidence—not whether there is evidence supporting the conviction. Certainly, an incriminating statement from an eyewitness or video evidence conclusively showing Mr. Lax strike Officer McGriff would *strengthen* the body of evidence supporting the hearing officer's decision. But the facts that Investigator Mills was not an eyewitness and that the video was inconclusive are reasons to question the weight the hearing officer should have given Investigator

Mills' report and the video. The Court may not entertain those questions. Investigator Mills' report and the investigative documents it is based on are "some evidence" supporting the hearing officer's decision, so Mr. Lax's conviction is supported by sufficient evidence.

As for Mr. Lax's challenge that no evidence shows that he intentionally struck Officer McGriff, he is mistaken. The conduct report and investigative documents discussed above document that Mr. Lax "punched" Officer McGriff. Even if other evidence supports the conclusion that Mr. Lax's contact with Officer McGriff was not intentional, "some evidence" in the record supports the hearing officer's conclusion that the contact was knowing or intentional. Finally, Mr. Lax's contention that Officer McGriff was not seriously injured is irrelevant, as Code A-102 does not define battery in a manner that requires the victim to be injured. So long as the prisoner knowingly or intentionally contacts a person in a rude, insolent, or angry manner, he violates the code regardless of whether the victim is injured.

**D.      Excessive Force and Self-Defense**

Finally, Mr. Lax argues that the officers who sought to restrain him used excessive force against him. Mr. Lax suggests that this either negates the evidence that he struck Officer McGriff intentionally or that his conduct should be excused as an act of self-defense.

As discussed in Part IIII above, "some evidence" in the record documents that Mr. Lax punched Officer McGriff and therefore touched him intentionally in a manner that violated Code A-102. This is enough evidence to support Mr. Lax's conviction, even if other evidence suggests that the contact was unintentional.

Moreover, an inmate who is disciplined for actions that violate the prison's disciplinary code is not deprived of due process merely because he acted in self-defense. *E.g.*, *McFadden v. Pearl*, 704 F. App'x 598, 600 (7th Cir. 2017) ("[A]n inmate does not have a constitutional right to

raise self-defense as a defense during a prison disciplinary proceeding."); *Gevas v. McLaughlin*, 798 F.3d 475, 484 (7th Cir. 2015) ("Prisoners lack even a right to invoke self-defense in disciplinary proceedings when they have resorted to violence as a means of protecting themselves."); *Jones v. Cross*, 637 F.3d 841, 848 (7th Cir. 2011) ("[I]nmates do not have a constitutional right to raise self-defense as a defense in the context of prison disciplinary proceedings."). In the context of this prison disciplinary proceeding, the officers' use of force against Mr. Lax has no bearing on the question of whether he could be properly convicted of assaulting Officer McGriff.

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. Mr. Lax's petition does not identify any arbitrary action in any aspect of the charge, disciplinary proceeding, or sanctions that entitles him to the relief he seeks. Accordingly, Mr. Lax's petition for a writ of habeas corpus is **denied**, and the action is **dismissed**. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date:  11/6/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

MARK LAX
988393
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Frances Hale Barrow
INDIANA ATTORNEY GENERAL
frances.barrow@atg.in.gov